IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RIN TIN TIN, INC., ET AL. | § | |
|     Plaintiffs, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. H-08-2853 |
| | § | |
| FIRST LOOK STUDIOS, INC., ET AL. | § | |
|     Defendants. | § | |

## ORDER

Pending before the Court is Defendants First Look Studios, Inc.'s *et al* Motion for Summary Judgment of "no liability" as a matter of law.

### I.

#### A.

Plaintiffs Rin Tin Tin, Inc. and Daphne Hereford ("Ms. Hereford," collectively, "Plaintiffs") bring suit against Defendants First Look Studios, Inc., First Look Home Entertainment, Inc., First Look Holdings, LLC, Nu Image, Inc., and Millenium Films, Inc. (collectively, "Defendants") for trademark and service mark infringement, dilution, and unfair competition under the Lanham Act and under Texas Law. (Instrument No. 30, at 6-11). Plaintiffs seek injunctive relief in addition to damages comprised of Defendants' profits, any damages sustained as a result of Defendants' allegedly infringing acts, treble damages, punitive damages, costs, and attorney fees. (*Id.*, at 11-14).

#### B.

Rin Tin Tin was a German Shepherd Dog who lived from 1918 until 1932. (*Id.*, at 2). He was owned by Lee Duncan ("Mr. Duncan"), who found him in France during World War I.

*(Id.)*. Rin Tin Tin and his life story became famous throughout the United States after he starred in several major motion pictures during the 1920s. *(Id.)*.

Mr. Duncan began a German Shepherd Dog breeding program in the 1920s. *(Id., at 2-3)*. He named puppies bred through the program "Rin Tin Tin," and he continued to present these dogs as "Rin Tin Tin" in movies, television shows, and other public appearances. (Instrument No. 30, at 3). He reportedly provided a puppy from this program to the grandmother of Plaintiff Ms. Hereford in Houston, Texas. *(Id.)*. Ms. Hereford's grandmother began her own German Shepherd Dog breeding program in Houston. *(Id.)*. She named puppies bred through the program "Rin Tin Tin" and showed "Rin Tin Tin" at dog shows. *(Id.)*.

Upon her grandmother's death, Ms. Hereford took over the breeding program. *(Id.)*. She incorporated Rin Tin Tin, Inc. in Texas to own and control the breeding program and all related endeavors. *(Id.)*. Ms. Hereford, through Rin Tin Tin, Inc., opened a Rin Tin Tin museum, developed a Rin Tin Tin website, started a Rin Tin Tin fan club, founded a charity to teach children about proper dog breeding, and continued to show German Shepherd Dogs named "Rin Tin Tin" at dog shows. (Instrument No. 30, at 3-4). All of these services were focused solely on maintaining the "Rin Tin Tin" lineage, including techniques for proper breeding, training, raising, and showing of German Shepherd Dogs that were purportedly blood relatives of the movie star Rin Tin Tin. *(Id., at 4)*. Rin Tin Tin, Inc. registered the following relevant U.S. trademarks and service marks:

| MARK | IDENTIFICATION | REG. NO. | REG. DATE |
|---|---|---|---|
| RIN TIN TIN | Live German Shepherd puppies of Rin Tin Tin lineage | 1,763,135 | 04/06/1993 |
| RIN TIN TIN | Live German Shepherd Dogs of Rin Tin Tin lineage; animal exhibitions and live animal performances featuring a German Shepherd Dog | 3,582,436 (was not filed until 02/01/2008) | 03/03/2009 (published for oppo. on 12/16/2008) |

2

(*Id.*, at 4-5).

Without permission from Plaintiffs, Defendants began distributing a motion picture on DVD titled "Finding Rin Tin Tin: The Adventure Continues" throughout the U.S. on September 16, 2008. (*Id.*, at 5). The movie is based on the life story of the original Rin Tin Tin, who was found by Lee Duncan in France in 1918. (*Id.*, at 2, 6). It features a German Shepherd puppy and dog who are called, in the movie, "Rin Tin Tin." (*Id.*, at 6). The DVD cover and disc both state their affiliation with Firstlook Studios, Inc., Nu Image, M3 Media, Inc., and Millenium Films. (Instrument No. 32-2, at 2-3). The DVD cover credits only Tyler Jensen and Ben Cross as starring in the film. (*Id.*, at 2). No other affiliation with Ms. Hereford, Rin Tin Tin, Inc., or the Rin Tin Tin bloodline is claimed on the DVD cover and/or disc. (*See Id.*).

## C.

### 1.

Plaintiffs filed a complaint against Defendants in the Southern District of Texas on September 24, 2008. (Instrument No. 1). In their First Amended Complaint, filed on March 26, 2009, Plaintiffs claim that the unauthorized use of the name "Rin Tin Tin" will cause confusion among consumers as to the origin, sponsorship, and nature of the movie, thereby injuring and/or diluting Plaintiffs' trademarks and service marks under federal law. (Instrument No. 30, at 6-10). Plaintiffs also claim injury and dilution under Texas regulations and/or common law. (*Id.*, at 10-11). They pray for destruction of all unsold and/or inventoried copies of the DVD, an injunction against Defendants' continued use of the Rin Tin Tin name, damages equal to profits, other damages, incidental costs, attorney fees, and treble damages for the unauthorized use of Plaintiffs' trademarks under federal law. (*Id.*, at 13-14).

3

**2.**

Defendants timely answered Plaintiffs' First Amended Complaint on April 1, 2009. (Instrument No. 31). Defendants' Answer denied all of Plaintiffs' substantive allegations. (*Id.*, at 4-15). The Answer also raised several affirmative defenses, questioning Plaintiff Hereford's standing in addition to arguing collateral estoppel, doctrine of unclean hands for trademark misuse and/or fraud, Plaintiffs' surrender and/or abandonment of the registered marks, lack of secondary meaning for the name Rin Tin Tin, Defendants' fair use under the First Amendment to the U.S. Constitution, doctrine of laches, statute of limitations, and res judicata. (*Id.*, at 16-19).

**3.**

Defendants filed the instant Motion for Summary Judgment on April 13, 2009. (Instrument No. 32). The Motion argues first that the *Rogers* First Amendment doctrine applies to "Finding Rin Tin Tin: The Adventure Continues", citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), thus rejecting application of the Lanham Act to the film; and second that the fair use doctrine, codified at 15 U.S.C. § 1125(c)(3)(C) as a defense to dilution and at 15 U.S.C. § 1115(b) as a defense to confusion, bars Plaintiffs' claims. (*Id.*, at 2-4). Defendants argue that the Lanham Act does not apply to their film because (a) the title has artistic relevance to the underlying work, and (b) the title does not explicitly mislead as to the source and/or content of the film. (*Id.*, at 5-9). Alternatively, Defendants contend that their movie is noncommercial speech, and thus protected by the fair use doctrine. (*Id.*, at 13-14). Defendants assert that both issues extend to Plaintiffs' Texas state law claims, completely exempting Defendants from prosecution for trademark infringement and/or dilution. (*Id.*, at 16).

**4.**

Plaintiffs responded to Defendants' Motion for Summary Judgment on May 4, 2009. (Instrument No. 36). First, Plaintiffs argue that application of the *Rogers* test requires a balancing of Defendants' First Amendment interests against the public's interest in avoiding confusion. (*Id.*, at 6-9). Plaintiffs state that balancing necessarily raises questions of material fact. (*Id.*, at 13-15). These questions of fact are answered by application of a seven-point "Digits of Confusion" test, which Plaintiffs contend must be answered by the jury. (*Id.*, at 9-10; 13-15). Second, Plaintiffs contend that the title "Finding Rin Tin Tin: The Adventure Continues" is a hybrid between commercial and noncommercial speech. (*Id.*, at 15-18). As such, Plaintiffs continue, the fair use defense under 15 U.S.C. § 1125(c)(3)(C) does not apply. (*Id.*). Finally, Plaintiffs point out that the noncommercial use/speech exemption, should it apply to Plaintiffs' federal claims, fails to bar Plaintiffs' state law claims according to the plain language of the Texas statute. (Instrument No. 36, at 18-19).

**5.**

Defendants filed a Corrected Reply to Plaintiffs' Response on May 18, 2009. (Instrument No. 39). Defendants assert that no issues of material fact exist with regard to application of the *Rogers* test to the movie, reliance on the fair use doctrine as a bar to both Plaintiffs' dilution and confusion claims, and failure of Plaintiffs' state-law claims. (*Id.*, at 1-10). Defendants claim they met their burden under the *Rogers* test by establishing that the title is relevant to the content and is not materially misleading; otherwise, Plaintiffs' claims fail because Plaintiffs did not produce any evidence of actual confusion. (*Id.*, at 6-8). Defendants also urge the Court to find that "Finding Rin Tin Tin: The Legend Continues" is artistic and/or expressive, thus noncommercial and exempt as a "fair use" from prosecution under the Lanham Act. (*Id.*, at

3, 8-10). Finally, Defendants argue that Plaintiffs' failure to show ownership of a distinctive mark and likelihood of dilution thereof prohibits Plaintiffs from claiming dilution under Texas regulations and/or common law. (*Id.*, at 10).

**6.**

Plaintiffs timely filed a Surreply to Defendants' Reply on May 18, 2009. (Instrument No. 38). Plaintiffs first objected to Defendants' failure to follow the Court's rules regarding font size.[1] (*Id.*, at 1-2). Plaintiffs then objected to Defendants' reliance on dicta in cases, to Defendants' alleged misstatements of law, and to Defendants' assertion of a defense under the fair use doctrine. (*Id.*, at 2-10). Plaintiffs also presented email evidence of Plaintiffs' trademark distinctiveness according to Plaintiffs' purported customers and associates. (Instrument No. 38-4).

**7.**

Defendants timely filed a Response to Plaintiffs' Surreply on May 29, 2009. (Instrument No. 40). Defendants argue that they made no trademark use of the name Rin Tin Tin and that, therefore, their descriptive use of the dog's name was protected as a fair use under the First Amendment. (*Id.*, at 1). Defendants urge the Court to view a recent federal case from the Northern District of Georgia – answering a similar question with regard to a film of a prize-winning racehorse, Ruffian – as analogous. (*Id.*, at 3-5). Finally, Defendants object to Plaintiffs' email evidence produced in their Surreply as unauthenticated and inadmissible hearsay. (*Id.*, at 7).

---

[1] Defendants corrected their font size by filing the Corrected Reply on May 18, 2009. (Instrument No. 39).

8.

Without the Court's permission, both parties continued to respond to each others' motions. Plaintiffs replied to Defendants' Response to Plaintiffs' Surreply on June 5, 2009. (Instrument No. 42). Defendants then responded to Plaintiffs' Reply on June 9, 2009. (Instrument No. 43). Lastly, Plaintiffs replied to Defendants' response on June 10, 2009. (Instrument No. 44). None of these final pleadings present new issues to the Court and are a vexatious waste of the Court's and the parties' resources, unnecessarily delaying the resolution of this case.

II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also U.S. v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. If the evidence rebutting the Motion for Summary Judgment is only colorable or is not significantly probative, summary judgment should be granted. *See Id.*, at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying

those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (quoting FED. R. CIV. P. 56(e)) (emphasis in originsl). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence [that] creates a fact issue.").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.

#### A.

In bringing a trademark infringement claim under the Lanham Act, Plaintiffs contend that the critical issue is the likelihood of confusion in the marketplace. (Instrument No. 38, at 5). They aver the public will confuse the German Shepherd Dogs in "Finding Rin Tin Tin: The Adventure Continues" with Plaintiffs' "Rin Tin Tin" German Shepherd Dogs. (*Id.*). Defendants argue that Plaintiffs' claim for trademark infringement should be dismissed because they made

8

no "trademark use" of the name "Rin Tin Tin." (Instrument No. 40, at 1). Instead, Defendants assert the movie title "Finding Rin Tin Tin: The Adventure Continues" is a "fair use" of the descriptive word. (*Id.*). The analysis of Defendants' "fair use" defense is relevant to both the confusion and dilution issues in Defendants' Motion for Summary Judgment.

While a plaintiff claiming infringement under the Lanham Act must show a likelihood of consumer confusion in order to prove that its incontestable trademark was infringed upon and diluted, a defendant raising the affirmative defense of "fair use" has no independent burden to rebut any confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004) (applying the fair use doctrine to a confusion claim) (citing 15 U.S.C. § 1115(b)); *Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 270-71 (5th Cir. 1999) (applying the fair use doctrine to a dilution claim) (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1189 n.30 (5th Cir. 1980)). All Defendants must do to assert the defense is establish that they used the disputed term (a) descriptively, (b) fairly, and (c) in good faith. *Id.*, at 118, 124 (citing 15 U.S.C. § 1115(b)). *See also Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 534 n.10 (5th Cir. 2002) (denying relief for trademark infringement because the jury also found the defendant established the defense of "fair use") (citing *Sugar Busters*, 177 F.3d at 270-71 (holding that the "fair use" defense only applies to descriptive terms used in their descriptive, non-trademark sense)); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, 2008 WL 616253, at *9 (N.D. Ga. 2008) (finding that a movie title with a dead horse's name was a non-trademark, fair use).

1.

The first element of the "fair use" defense – descriptiveness – is established if the term "denote[s] 'a characteristic or quality of an article or service.'" *Test Masters Educational*

*Services, Inc. v. Singh*, 428 F.3d 559, 566 (5th Cir. 2005) (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983)); *see, e.g., Soweco*, 617 F.2d at 1183-84 ("Examples of descriptive marks would be "Vision Center" in reference to a place where one purchases eyeglasses, Vision Center, supra, or "EVERREADY" with reference to batteries or light bulbs." [citations omitted]). The United States Patent and Trademark Office has held that a product named after a historical figure – and that "intends to represent" that historical figure – is a descriptive use. *In re Carlson Dolls Co.*, 31 U.S.P.Q.2d 1319, 1320 (T.T.A.B. 1994) (rejecting the mark "Martha Washington" used in connection with a historical doll made in Martha Washington's likeness). Similarly, other U.S. District Courts have found that a motion picture titled after a historical figure's name – in a film that intends to represent that historical figure – is a descriptive use. *See, e.g., Thoroughbred Legends*, 2008 WL at *7-8 (finding that "Ruffian" was a descriptive, non-trademark title for a movie about Ruffian the horse). The key issue courts consider is whether use of the term is meant to identify the source of the good or service, or whether such use is meant solely to describe the product. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002) ("when unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right"); *TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) (noting anti-dilution statutes are not intended to address non-trademark uses of a name protected by the First Amendment). *Cf. William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 529 (1924) ("The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product.").

Defendants used Plaintiffs' trademarked term "Rin Tin Tin" in connection with the motion picture "Finding Rin Tin Tin: The Adventure Continues." (Instrument No. 30, at 5). Plaintiffs do not dispute that, in so doing, Defendants described the content of a film representing the early life of the historical dog Rin Tin Tin. (*Id.*, at 6). Defendants did not state on the DVD cover or in the film that they were in any way sponsored or affiliated with Plaintiffs, nor did they list "Rin Tin Tin" as starring in the film. (*See* Instrument No. 32-2, at 2-3). Rather, the DVD cover expressly identifies First Look Studios, Nu Image, Inc., M3 Media, Inc., and Millenium Films as sponsors of the film. (*Id.*, at 2-3).

Plaintiffs have raised no issues of material fact regarding Defendants' source identifiers on the DVD cover or in the film itself. Plaintiffs argue only that "Defendants' movie creates a new RIN TIN TIN [sic] German Shepherd Dog" that consumers will confuse with Plaintiffs' German Shepherd Dogs of Rin Tin Tin lineage. (Instrument No. 38, at 5). As noted in U.S. Supreme Court and Fifth Circuit precedent, however, a Defendant asserting a "fair use" defense need not rebut the likelihood of consumer confusion or dilution from its use of a descriptive term. *KP Permanent Make-Up*, 543 U.S. at 124 (citing 15 U.S.C. § 1115(b)); *Sugar Busters*, 177 F.3d at 270-71 (5th Cir. 1999) (citing *Soweco*, 617 F.2d at 1189 n.30). Otherwise, Plaintiffs failed to question either the descriptiveness of Defendants' title or the source identifiers for Defendants' movie. Accordingly, this Court finds that the Defendants' use of the historical dog Rin Tin Tin's name in the title of their motion picture was a descriptive use.

**2.**

The second element of the "fair use" defense – fairness – is established if Defendants' use of "Rin Tin Tin" in the title of their film is the most precise way to describe their product. *Soweco*, 617 F.2d at 1187. A use is precise if it intends to and does in fact describe the product.

11

*Id.*, at 1186-1187. A word intends to describe a product if it tells the consumer what the product does. *Id.* A word does in fact describe a product if the product does what the consumer was told it would do. *Id.*

In *Soweco*, the plaintiff alleged that the defendant's products "RABON Oral Larvicide" and "SHELL Poultry Spray & Larvicide" infringed on plaintiff's product "LARVICIDE." *Id.* The Fifth Circuit disagreed, relying on plaintiff's own testimony that defendant's products "kill[ed] specifically larvae and nothing else." *Id.*, at 1187. The product description "larvicide," therefore, told the consumer the product was intended to kill larvae, and the product in fact killed larvae. Based on this undisputed evidence, the court held that the defendant fairly used the word "larvicide" to describe its product. *Soweco*, 617 F.2d at 1187.

Like the defendant in *Soweco*, Defendants in the instant case allegedly infringed on and diluted Plaintiffs' trademark, "Rin Tin Tin," in making the motion picture "Finding Rin Tin Tin: The Adventure Continues." (Instrument No. 30, at 6-10). Plaintiffs do not dispute that Defendants' film is based on the life of the historical dog Rin Tin Tin, who died in 1932. (*Id.*, at 6). The film title "Finding Rin Tin Tin: The Adventure Continues", therefore, tells consumers the movie is about the historical dog Rin Tin Tin, and the movie in fact is about the historical dog Rin Tin Tin. Based upon the precedent in *Soweco*, this Court holds that Defendants – much like the defendant owners of larvicide products – fairly used the term "Rin Tin Tin" to describe the content of their film.

Plaintiffs presented no evidence that Defendants' use of the term "Rin Tin Tin" was an unfair portrayal of the subject of the movie. Instead, Plaintiffs argued only that Defendants' use created a likelihood of confusion in the marketplace, diluting Plaintiffs' trademark. (Instrument No. 36, at 10). As discussed, however, Defendants have no burden to rebut any likelihood of

12

confusion between their product and Plaintiffs' breeding program. *KP Permanent Make-Up*, 543 U.S. at 119-20 (rejecting the "suggestion that 'used fairly' in § 1115(b)(4) is an oblique incorporation of a likelihood-of-confusion test"). Accordingly – without evidence to the contrary – this Court finds that Defendants fairly used "Rin Tin Tin" in the title of their motion picture about the historical dog Rin Tin Tin.

### 3.

The third and final element of the "fair use" standard – good faith – is established by showing that Defendants' use of a trademarked term in the title of a film "conveys no information about the origin of the film." *Thoroughbred Legends*, 2008 WL at *9. Other U.S. federal courts have found that a trademarked name as part of a product's title does not convey information about a product's origin as long as defendants employed their own source designations elsewhere on the product. *See, e.g., Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 807 (9th Cir. 2003) (denying application of Lanham Act to photos of Barbie with "Barbie" in photo descriptions because the photographer put his own name on the photos and produced them on his own web-site); *Rogers v. Grimaldi*, 875 F.2d 994, 996-97 (2d Cir. 1989) (finding that the film title "Ginger and Fred" did not mislead as to sponsorship because, in part, it indicated that it was created and directed by Italian filmmaker Federico Fellini); *Thoroughbred Legends*, 2008 WL at *9 (holding that a movie studio's name on the DVD cover – and not a horse's name in the title of the film – conveyed information about the film's source and/or origin). The test, then, is whether the alleged infringer made clear on its product's face that it – and not the trademark holder – is the source of the product. *See MCA Record*, 296 F.3d at 901 (explaining that a song titled "Barbie Girl" did not violate Mattel's trademark "Barbie" because

the song was clearly denoted as created/performed by Aqua, a music group, and did not therefore use "Barbie" to identify the publisher or producer).

As discussed above, Defendants' use of the term "Rin Tin Tin" described the content of the film. (Instrument No. 30, at 6). "Rin Tin Tin" was not a source identifier anywhere on the DVD cover or within the film, itself. (Instrument No. 32-2, at 2-3). In fact, the only listed source identifiers on the DVD cover, disc, and within the film, itself, were First Look Studios, Nu Image, Inc., M3 Media, Inc., and Millenium Films. (*Id.*). Plaintiffs failed to present evidence of an improper insinuation of their sponsorship of or affiliation with the film by Defendants. Accordingly, this Court finds that Defendants' use of "Rin Tin Tin" conveys no information about the origin of the film and was in good faith.

Plaintiffs argue, however, that Defendants used "Rin Tin Tin" in the title both to describe the content of the film and to imply an affiliation with or sponsorship by Plaintiffs. (Instrument No. 36, at 14-15). But the case on which Plaintiffs rely to support their argument – *Westchester Media Co. L.P. v. PRL USA Holdings, Inc.* – is not analogous to the present case. 214 F.3d 658, 664-665 (5th Cir. 2000). *Westchester* "applie[d] the likelihood of confusion test" to "determine whether an artistically relevant title misleads as to the source or content of the work." *Id.* As discussed, however, Defendants are not required to rebut the likelihood of confusion test to assert the affirmative "fair use" defense. *KP Permanent Make-Up*, 543 U.S. at 121-22. The Supreme Court even noted "that some possibility of consumer confusion must be compatible with fair use." *Id.*, at 121. Plaintiffs' argument therefore fails; Defendants have established the third element of the "fair use" defense.

**4.**

Defendants have established all three elements of the "fair use" defense and have met their burden of proof. Defendants used the name "Rin Tin Tin" in the title of their motion picture to describe the subject of "Finding Rin Tin Tin: The Adventure Continues," which is based on the true life story of the World War I-era German Shepherd Dog. (Instrument No. 30, at 6). This descriptive use of the name is fair because it tells the consumer what the film is about – the story of the historical dog Rin Tin Tin – and because it is actually about the historical dog Rin Tin Tin. (*Id.*). Finally, this fair and descriptive use is in good faith because Defendants expressly identified on the DVD cover, disc, and in the film, itself, that First Look Studios, Nu Image, Inc., M3 Media, Inc., and Millenium Films are the source of the film. (Instrument No. 32-2, at 2-3).

This Court finds that, consistent with the Supreme Court's holding in *KP Permanent Make-Up* and with the Fifth Circuit's holding in *Sugar Busters, LLC v. Brennan*, Defendants' affirmative defense is sufficient, and they are not required to rebut any likelihood of confusion that may have been caused between the film and Plaintiffs' dog-breeding program. Because the defense is sufficient, Defendants are not liable with regard to Plaintiffs' dilution claims. Defendants title "Finding Rin Tin Tin: The Adventure Continues" is a fair use of the term "Rin Tin Tin" and is protected by the First Amendment from Plaintiffs' claims of confusion and dilution. Plaintiffs' have failed to raise any issues of material fact with regard to the three elements of the "fair use" test. Accordingly, the Court grants Defendants' Motion for Summary Judgment as a matter of law. FED. R. CIV. P. 56.

Furthermore, where the First Amendment applies to protect titles and works from federal claims of confusion and dilution, it also extends to state-based claims of infringement, dilution,

and unfair competition. *TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) (holding that the Texas Anti-Dilution Statute was not intended to address non-trademark uses of a name protected by the First Amendment). Therefore, the Court's finding of "fair use" as a defense to Plaintiffs' federal claims also bars Plaintiffs' state-law claims. *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) ("Since the First Amendment defense applies equally to [plaintiff's] state law claims as to its Lanham Act claim, the district court properly dismissed the entire case on [defendant's] motion for summary judgment").

## IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (Instrument No. 32). This case is dismissed.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 12th day of November, 2009, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**